# PRACTICE REPORTS.

## SUPREME COURT.

### LIVINGSTON agt. GIDNEY.

### GIDNEY agt. LIVINGSTON.

The *report of a referee* made *after sixty days* from the time the action shall have been finally submitted to him, is not rendered *absolutely null and void* under § 273 of the Code, (as amended in 1862,) so that one party can proceed at once and notice the action for trial at the circuit, as though no reference had been ordered.

- The amendment to this section was intended to expedite decisions in referred cases, and to enable either party to enforce promptness, but not to take away from parties and the courts the control of the *practice* in such suits.

A *notice*, any time after the expiring of the sixty days, that the party giving it takes advantage of the section and declines to be bound by any report that may be thereafter made, would render the *subsequent* making of a report *irregular;* and the report would be liable to be set aside, of course, on motion. But if the *report be made*, it cannot be said to be *void*, so as to require neither notice nor motion.

Where the parties at the hearing before the referee *verbally* agree to give him *such time as he may need*, such an agreement can be *enforced.*

An *extra allowance* of *two per cent.* on the amount claimed ($25,000) in a mortgage foreclosure suit allowed, it appearing that there was no sufficient excuse for the litigation on the part of the defendant.

*Albany Special Term, March,* 1863.

THESE cases were duly referred to the Hon. WILLIAM B. WRIGHT, as a referee, to hear and determine. After numerous adjournments and some delays the briefs were finally submitted late in November, 1862. The statement of the referee (verified by the affidavit of counsel) is that it was agreed by the parties, at the hearing before him, that he might decide the cases within such time as his official engagements would reasonably permit. The consulta-

tion term of the court of appeals and preparation for it, occupying the most of the month of December, 1862, and the regular term of the court taking the greater part of the month of January, 1863, the referee deferred his decision until the 23d of February, 1863, on which day he delivered his report in each case to Mr. Gidney's attorney, and both were duly filed in the office of the clerk of Ulster county. Copies of those reports, with the usual notices, were duly served on Mr. Livingston (attorney in person) on the 3d day of March, 1863.   On the 6th day of March, 1863, Mr. Livingston (having received the reports and notices) served notice of trial in each case for the then next Ulster circuit, to be held March 23d, 1863.   At this circuit Mr. Gidney moved to strike the causes from the calendar, on the ground that they had been tried and determined by the referee; and the justice holding the circuit ordered the motions to stand over until this special term, then to be heard in connection with Mr. Gidney's motions (then already noticed for this term) to confirm the reports, &c., and to make an extra allowance to said Gidney. These motions now come up to be heard together

J. E. VAN ETTEN, *attorney, and* IRA HARRIS, *counsel for Gidney.*

HENRY SMITH, *counsel for Livingston.*

GOULD, Justice.   On this hearing it is claimed that the Code (§ 273, *as amended in* 1862,) in saying that a referee " shall make and deliver his report within sixty days from the time the action shall be finally submitted, and on default thereof shall not be entitled to receive any fees, and the action shall proceed as though no reference had been ordered," has made the action of the referee after such sixty days had expired a *nullity;* and that the report and judgment are *void* in these cases; and that the only way of proceeding in them is by trial at the circuit.

This hardly seems the true construction of the section. The intention of the section, no doubt, is to expedite decisions in referred cases, and to enable either party to enforce promptness; but it probably does not mean to take away from parties the control of the *practice* in their own suits, or to say that they *shall not* allow to a referee *any* time which they see fit to. It is merely a point of practice, upon which either party may (according to the rules in analogous cases) insist, or which he may waive, and the manner in which he may so insist or waive, is of necessity to be regulated by the courts. He should, *before* any binding action be had in the shape of a report, *do something* which signifies his *intention to act* on this provision—a notice of trial on the sixty-first (or any subsequent) day, if there were no report or judgment, would no doubt be a sufficient indication of his intent to enforce the right; and he could thereupon move to stay the referee from further proceedings in the case; or, perhaps, by giving to the referee and party notice not to proceed, as the cause would be tried at the circuit, he might put the other party to a motion to extend the time by order of court; and unless such motion were made and granted, he could proceed to try at the circuit. But the report by being (before and without objection) signed and filed, becomes *the* judgment of the court, binding all parties, unless it be *absolutely void*, as being made so by this section. In accordance with this view, *a notice*, any time after the expiring of the sixty days, that the party giving it takes advantage of the section and declines to be bound by any report that may be thereafter made, would render the *subsequent* making of a report irregular, and the report would be liable to be set aside, of course, on motion; but if the report be made, it cannot be said to be *void*, so as to require neither notice nor motion.

Such a construction places it within the power of the court to prevent the taking of any unfair advantage, by a

party who sees'fit to wait for the report, *without objecting to the delay*, and if it be in his favor to abide by it, but if it be against him to hold it void; also, by so reading the·section the court can interpose to obviate the inevitable evils that would follow the holding of it to be an absolute and unbending rule, taking from parties all control over the proceedings in their own suits.

That the subject of this part of the section is, for some purposes, a matter of *practice*, is made sure by the words, " unless the court shall otherwise *order*." Such order is, necessarily, within the discretion of the court; and would not that discretion be well exercised if, after a case were submitted, the referee should fall sick and be unable to decide within the sixty days ? And were the application for such order to be deferred (in the hope of the referee's becoming able to decide within the time, or in ignorance of his sickness,) until *after* the sixty days had expired, is there any doubt that the court would then make the order, and that, even, *against* the objection of the opposite party ? The true criterion for granting or refusing the order would be, as in all cases of practice, the *reasonableness* of granting it, under all the circumstances; and where no such order had been made before a report had been signed, though signed after the sixty days, there seems no sound objection to making (in the discretion of the court) an order *nunc pro tunc after* the making, &c. of the report.

In the cases before me, however, there is another point. The parties at the hearing before the referee (which is in effect in open court) gave him such time as he might need, and such an agreement, though not written, can be enforced. There is no sound rule of practice and no reason against so doing.

Upon either view the reports are well made and valid; the judgment of dismissal, &c., is well entered ; and the notice to confirm the report, and for costs, &c., must be granted, and Mr. R. Bernard appointed referee to conduct

the sale of the mortgaged premises. Of course the causes cannot go upon any future circuit calendar, unless a reversal be had on appeal.

As to extra allowance, the case seems to be one in which the law authorizes such allowance, and one in which, taking the facts as found by the referee, there seems to be no sufficient excuse for the litigation on the part of the defendant in the foreclosure suit, or in the suit staying the statute foreclosure. An allowance of *two per cent.* on the amount claimed by Livingston, ($25,000,) which is the amount of the subject matter involved, is ordered to the defendant in the suit of Livingston agt. Gidney. Costs of two motions ($10 each) to be included in the costs in the suits—one motion in each suit.